IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT
EASTERN DIVISION

**LISA CIRELLO**

    **Plaintiff**

 **v.**             **Case No.**

**ROADSAFE TRAFFIC SYSTEMS INC.**

    **Defendant**

## COMPLAINT FOR VIOLATIONS ADA

**NOW COMES** Plaintiff, LISA CIRELLO, by and through his attorney Steven D. Horak and for his cause of action states as follows;

1. Plaintiff, LISA CIRELLO, is a female who resides in Chicago Cook County Illinois. Plaintiff is a disabled individual who was qualified to do her job. Due to a workmen's compensation accident, Plaintiff suffered injuries that made her disabled.

2. Defendant, **ROADSAFE TRAFFIC SYSTEMS** Inc. is one of the nation's largest providers of infrastructure safety services and products. The Company's offerings include traffic control, pavement markings, sign manufacturing and installation, and distribution of innovative traffic safety products. RoadSafe's customers include heavy highway contractors, state transportation departments, municipal governments, special events organizations, U.S. railroads and utility companies. Among its locations in Illinois, RoadSafe operates a yard/terminal in Romeoville and Joliet Illinois from which it dispatches workers and equipment.

3. Defendant is a corporation who has offices located in Illinois and does business in Illinois and engaged in a business that affects interstate commerce that employs 15 persons or more

persons within the state during at least 20 weeks of a year. Defendant may be served through its registered agent.

4. The Court has jurisdiction as this case as it is a federal question of law. This case is brought pursuant to Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

5. Venue is proper in this Court as Defendant is located in Illinois and acts and occurrences and the actions occurred in Illinois.

6. Plaintiff filed timely filed a charge of discrimination with the Equal Opportunity Commission ("EEOC") in a timely matter. Plaintiff received a right to letter dated March 6, 2025. This Complaint is filed within 90 days of the issuance of the right to sue letter from the EEOC.

7. Plaintiff began her employment with the Defendant on or about September 1,2009. Plaintiff position was that of Pavement Marking Technician.

8. Plaintiff is substantially limited in major life activities include, but are not limited to, performing manual tasks, standing for long periods, lifting, bending, twisting repeatedly and/or working. Plaintiff has limitations of other major bodily function, including but not limited to digestive and PTSD

9. Plaintiff has (A) a physical or mental impairment that substantially limits one or more major life activities, (B) a record of such an impairment, or (C) Defendant also regarded Plaintiff as having such an impairment

10. Plaintiff is a female who injured her back while working for Defendant. Her back injury made her disabled or Defendant perceived her to be disabled. After her injury a coming back to work, Defendant accommodated the Plaintiff and placed her in a position to drive as she

2

had a CDL. In those positions, Defendant had Plaintiff sit and drive for long periods of time in trucks.

11. Defendant was aware of Plaintiff's disability while she worked for Defendant and at the time the actions complained of herein occurred.

12. During her employment with Defendant, Plaintiff was subjected to different terms and conditions of employment, including but not limited to not being able to point drive while male co-workers were allowed to do said work and being given a different set of job requirements than listed on their job postings online website.

13. During Plaintiff employment with Defendant, Plaintiff asked to get trained as a point driver. Defendant would not provide her training so she could become a point driver. Defendant segregated plaintiff due to her being a female and refused to allow her jobs because she was female..

14. Male drivers were given training to be Point drivers and Plaintiff because she was a female was denied such training and the job as a point driver.

15. Defendant hired or transferred male workers without a CDL helped the acquire the CDL or endorsements to specifically place them in the position to be trained in point driving.

16. Plaintiff complained that she was not getting training and Defendant still refused to train her and/or ignored her request for training.

17. For several years Plaintiff worked for Defendant with the Restrictions. Plaintiff was the only female driver with a CDL who worked for Defendant.

18. Plaintiff performed her job satisfactorily. Only upon Plaintiff making a complaint of dsicrimaiton did Defendant start to have issues with the Plaintiff.

19. During several years of her employment, Plaintiff refused to sign an EEO acknowledgment form as she was being discriminated against by the Defendant. In 2022, Defendant discovered this and came to Plaintiff and asked her to sign the EEO form. Defendant agreed to provide Plaintiff training to Plaintiff to be a point driver if she signed the EEO form. Plaintiff signed the EEO form and received about a month of training. After the month, Defendant failed to provide here any additional training to become a point driver.

20. Plaintiff again asked to be trained to do the point drive. Defendant refused to provide Plaintiff training to do point driving.

21. Plaintiff had a good faith belief that she was being discriminated against for years because she was female and Defendant would not provide her jobs or training for jobs because she was female.

22. After Defendant refused to give more training to Plaintiff, Plaintiff made a complaint of discrimination to Defendant on or about June 3, 2024. Almost immediately from the time Plaintiff made the complaint of discrimination Defendant through Bill Seeman started to closely monitor the Plaintiff and write her up for work. Defendant watched Plaintiff on video and then wrote her up. The write-ups were at that point given to her in Romeoville in a room with HR and other managers this was not common practice for receiving a write up. This did not occur prior to Plaintiff making a complaint of discrimination against the Defendant. Male employees were not treated this way.

23. When Plaintiff reported her discriminatory concerns to Defendant on June 3rd, 2024, Plaintiff reported that she felt it was now a hostile work environment because of scheduling and being told she would not be put in the position to drive a "$2.1 million truck" by Michael Passaglia (project manager) she was being discriminated against and asked to be treated

equally to men who work for Defendant. Plaintiff felt that because she was a woman he made this statement as men were allowed to drive said trucks and Plaintiff had a CDL to drive said truck.

24. In addition to the closer supervision, Defendant started to use Plaintiff back injury against her to justify not providing her with her with her jobs and training or other jobs. Prior to her complaint of discrimination to Defendant, Defendant required Plaintiff to do jobs outside of same restriction defendant now would not allow Plaintiff to do.

25. Until Plaintiff uttered the word "discrimination' to Defendant, Defendant allowed Plaintiff to drive and was not subject to Defendant limitations for her to work. Once Plaintiff uttered the word "Discrimination" to Defendant in June , 2024, Defendant changed how it treated the Plaintiff and started to find ways to write her up and fire her.

26. Defendant fired the Plaintiff on June 28, 2024.

27. Plaintiff was treated less favorably than other similarly situated employees of Defendant due to Plaintiff being disabled, a woman and/or in retaliation for making a complaint of discrimination.

28. Plaintiff was damaged by Defendant's actions including financial loss such as but not limited to her lost wages and benefits, loss to her reputation, emotional stress that had Physical ailments as part of the emotional stress.

29. The actions of Defendant toward Plaintiff were malicious or recklessly indifferent to was in reckless disregard to Plaintiff's rights.

## COUNT I TITLE VII

30. PLAINTIFF realleges the prior paragraph into Count I as set forth herein.

31. Plaintiff is a female and the only female driver for Defendant.

32. 42 USC § 2000e et. Seq. makes it illegal to discriminate against someone because of their sex. 42 USC § 2000e-2(a)(1) makes it an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to their compensation, terms, conditions, or privileges of employment, because of such individual's sex.

33. Defendant's termination and other actions such as closely monitoring of Plaintiff, discipline and other acts by Defendant towards her as well as the differences in Plaintiff's terms and conditions of employment were done because of Plaintiff being a female, and the Employer's actions were unlawful discrimination against Plaintiff in violation of 42 USC § 2000e-2(a)(1).

34. Plaintiff suffered multiple adverse employment action due to Plaintiff's gender/sex, being a female.

35. Plaintiff was damaged due to Defendant's unlawful actions towards her.

## COUNT II ADA

36. PLAINTIFF realleges paragraph 1-35 into Count II as set forth herein.

37. Plaintiff's impairments substantially limited her in one or more major life activities, including but not limited to lifting and other limitations that were known to Defendant as other major life activities as set forth herein and Plaintiff is a person who is disabled under the ADA.

38. Defendant is an employer as defined by the ADA.

39. Plaintiff is an otherwise qualified individual with a disability subject to the protections afforded under Title I of the ADA, 42 U.S.C. §§ 12111, et seq.,

40. Title I of the ADA prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity[.]" 42 U.S.C. § 12112(b)(5)(A). 26.

41. An employer may not deny "employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee[.]" 42 U.S.C. § 12112(b)(5)(B).

42. No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 USCS § 12112

43. The ADA states that an employer is required to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]." 42 U.S.C. 12112(b)(5)(A).

44. Defendant refused to reasonably accommodate the Plaintiff. Additionally, Defendant used Plaintiff's disability against her to restrict her to fire her.

45. Defendant treated Plaintiff differently in the terms and conditions of her employment which harmed the Plaintiff due to her being disabled.

46. Defendant's actions as set forth herein towards Plaintiff violated the ADA including 42 U.S.C. 12112(b)(2) when it fired Plaintiff and treated her inferior in relation to the terms and conditions of her employment.

47. Defendant's actions damaged the Plaintiff.

## COUNT III RETALIATION

48. Plaintiff realleges paragraph 1-47 into Count III as set forth herein.

49. Title VII of the Civil Rights Act of 1964 , 42 U.S.C. § 2000e-3(a), makes it unlawful employment practice for an employer to discriminate against any of his employees or to discriminate against any individual because he has opposed any practice made an unlawful employment practice.

50. The ADA makes it unlawful employment practice for an employer to discriminate against any of his employees or to discriminate against any individual because he has opposed any practice made an unlawful employment practice or for requesting an accommodation due to a disability.

51. Defendant, a short time after Plaintiff made a complaint of discrimination, started to create reasons to fire her and started to closely monitor the Plaintiff, watch her on video to find ways to discipline Plaintiff and did other actions to Plaintiff in retaliation for her making a complaint of discrimination to Defendant in June 2024.

52. Defendant fired the Plaintiff a short time after she reported the dsicrimaiton to Defendant, thereby raising an inference of retaliatory motivation.

53. Other employees who were Male or not disabled or did not request an accommodation who were similarly situated to Plaintiff were not treated the same way as Plaintiff.

54. Defendant's actions toward Plaintiff including her termination were done in retaliation for Plaintiff's asserting her rights under TITLE VII ,42 U.S.C. § 2000e-3(a) and the ADA.

55. The actions of DEFENDANT toward Plaintiff damaged the Plaintiff and were malicious or recklessly indifferent to was in reckless disregard to PLAINTIFF'S rights.

WHEREFORE, Plaintiff, , prays that this Court (i) declare that the employment practices complained of in this complaint are unlawful in that they violate the ADA; (ii) declare that the employment practices complained of in this complaint are unlawful in that they violate the Title VII; (iii) permanently enjoin the Defendant and its agents, officers and employees from engaging in all practices found by this Court to be in violation of the ADA and/or Title VII; (iv) order the Defendant to make the Plaintiff whole with full back pay, and reimbursement for all loss of fringe benefits, insurance, Social Security, front pay and other monetary and non-monetary benefits, and prejudgment interest, all in amounts to be proved at trial; (v) order that the Defendant pay Plaintiff a sum in excess of $300,000 as compensatory, punitive damages or other damages allowed by the statutes; (vi) order defendant to employ the Plaintiff to the position she would have been in had he continued to work for Defendant with all pay and promotion he would have made or pay Plaintiff front pay and provide her training for the jobs she was denied while Men were allowed to train for; (vii) retain jurisdiction over this action to ensure full compliance with the Court's orders and require the Defendant to file such reports as the Court deems necessary to evaluate such compliance; (viii) order the Defendant to pay Plaintiff's costs and expenses and reasonable attorneys' fees as provided in Title VII and/or the ADA in' connection with this action; and (ix) grant such other and further relief to the Plaintiff as the Court deems just and proper.

## **JURY DEMAND**

**PLAINTIFF DEMAND A JURY TRIAL ON ALL ISSUES.**

/s/ Steven D. Horak
Steven D Horak #
940 Knollwood Dr
Buffalo Grove IL 60089
847-877-3120
Steve@stevenhoraklaw.com
Attorney For Plaintiff